902 P.2d 474

**In the Matter of the Application of Kermit NIELSEN, For a Writ of Habeas Corpus.**

**Kermit NIELSEN, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 21471.

Supreme Court of Idaho,
Idaho Falls, May 1995 Term.

Aug. 16, 1995.

Rehearing Denied Oct. 5, 1995.

**450**

David N. Parmenter, Blackfoot, for appellant.

Hon. Alan Lance, Attorney General; Lynn E. Thomas, Solicitor General, Boise, for respondent. Lynn E. Thomas, argued.

TROUT, Justice.

The petitioner, Kermit Nielsen, is an insanity acquittee who seeks release from commitment on the ground that he is not mentally ill.

## I.

## BACKGROUND

The facts giving rise to this appeal are similar to those in *Gafford v. State,* 127 Idaho 472, 903 P.2d 61 (1995), and *Henry v. State,* 127 Idaho 349, 900 P.2d 1360 (1995). Nielsen, like Gafford and Henry, has a long history of mental illness. In September of 1971, he was charged with first degree murder in connection with the brutal slaying of his girlfriend. On January 13, 1972, he was acquitted of these charges by reason of insanity and has since been confined at the Idaho Security Medical Facility in the State Penitentiary, or at State Hospital South in Blackfoot, Idaho. However, unlike Gafford, the record reveals that Nielsen continues to suffer from the mental condition (a personality disorder) that led to his acquittal of criminal charges in 1972.

In 1992, the United States Supreme Court struck down a Louisiana statute that allowed an insanity acquittee to be committed to a mental institution until he could demonstrate that he was not dangerous, even though he was no longer mentally ill. *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Relying on this decision, Nielsen filed a petition for writ of habeas corpus seeking release from confinement on the ground that he is not mentally ill.

## II.

## PROCEDURAL HISTORY

The magistrate determined that I.C. § 66–337(d), which allows for the continued confinement of insanity acquittees on the basis of dangerousness alone, is unconstitutional in light of *Foucha.* With regard to Nielsen's mental condition, the magistrate found that "the conditions as found by [the acquitting court] in 1972 [are no] longer present at this time." While the magistrate also found that Nielsen is a dangerous person, he concluded that the State cannot continue Nielsen's confinement on the basis of dangerousness alone.

On appeal, the district court reversed the magistrate's decision. It concluded that although the Idaho release statute is unconstitutional per *Foucha,* that decision does not apply retroactively to Nielsen's case. It also concluded that Nielsen is estopped to challenge the constitutionality of the release provisions and that because he acquiesced in the use of the insanity defense, he has waived his right to challenge the statute under which he was committed. Finally, it determined that

the magistrate's finding that Nielsen is no longer mentally ill was erroneous because the record established that the basis for Nielsen's acquittal persists. Alternatively, it held that Nielsen could not re-litigate the issue of whether the mental condition from which he currently suffers constitutes a "mental illness" since that issue was previously adjudicated in the acquittal proceedings. On appeal, Nielsen contends that the magistrate, and not the district court, was correct.

## III.

### STANDARD OF REVIEW

When an appeal is initially taken to the district court from a decision by a magistrate, any subsequent review by this Court will be conducted independent of, but with due regard for, the decision of the district court. *Smith v. Smith*, 124 Idaho 431, 436, 860 P.2d 634, 639 (1993) (citations omitted). We will uphold the magistrate's findings of fact if supported by substantial and competent evidence. *Id.* However, free review is exercised over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *State v. Weber*, 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989).

## IV.

### APPLICATION OF *FOUCHA v. LOUISIANA*

As a threshold matter, the State contends that the holding in *Foucha* represents a new rule of constitutional law that should not be retroactively applied to Nielsen's case. For the reasons set forth in *Gafford*, we hold that *Foucha* applies to the terms of Nielsen's present and continuing confinement. *See Gafford* at 4. Accordingly, we will proceed first to a review of the relevant factual findings made by the trial court. We will then determine whether Nielsen's present confinement violates due process under the analysis articulated in *Foucha*.

### A. The Finding That Nielsen is Currently Dangerous is Supported by Substantial and Competent Evidence

The magistrate found that Nielsen continues to be a dangerous person. The evidence produced by the State relating to this issue is exemplified by the testimony of Dr. David Ranks, Nielsen's primary therapist at State Hospital South. Dr. Ranks testified that "Kermit Nielsen is one of the few most dangerous people I've ever known." Accordingly, the magistrate's finding that Nielsen is currently dangerous is supported by substantial and competent evidence and is therefore affirmed.

### B. The Finding That Nielsen no Longer Suffers From the Mental Condition That led to his Acquittal is not Supported by Substantial and Competent Evidence

With regard to Nielsen's current mental condition, the magistrate found that "the conditions as found by [the acquitting court] in 1972 [are no] longer present at this time." Based on our independent examination of the record, we conclude that the evidence adduced at the hearing on Nielsen's petition provides insufficient support for this finding.

Dr. Dwight Petersen, Chief Psychologist at State Hospital South, testified that Nielsen has a very fixed personality disorder that has remained unchanged from the time of acquittal. Dr. Ranks testified that "[f]rom my review of the records and from my interactions with Mr. Kermit Nielsen, I would say that [Nielsen's mental condition] is the same as it was at the time that he was committed." This evidence was not contradicted by Nielsen's own expert, nor by the exhibits introduced by Nielsen relating to the issue. Given the lack of support in the record, the magistrate's finding that Nielsen's mental condition has changed is clearly erroneous. Accordingly, this finding is reversed.

### C. *Foucha* Does not Mandate Nielsen's Release

Although the record does not support the finding that Nielsen's mental condition has changed since his acquittal, the evidence presented does support the conclusion that Nielsen's mental condition is such that he

would not be subject to civil commitment. Citing *Foucha*, Nielsen contends that if an insanity acquittee could not be civilly committed, then that person can no longer be confined in a mental institution. We do not read *Foucha* to stand for this proposition.

The *Foucha* Court held that an insanity acquittee is entitled to release, as a matter of due process, when the original basis for commitment no longer exists or the person is no longer dangerous. If confinement is to be perpetuated beyond this point, the State must demonstrate through other means, such as civil commitment proceedings, that the continued confinement is constitutionally proper. *Foucha* at 77–81, 112 S.Ct. at 1784–86. Thus, before an insanity acquittee is entitled to insist on civil commitment proceedings to establish a *new* basis for commitment, the *original* basis for commitment must cease to exist.

As stated above, the record clearly reveals that the basis for Nielsen's criminal acquittal and commitment persists. Accordingly, *Foucha* does not require that he be released, nor does it require that his continued commitment be justified anew by civil commitment proceedings. Simply stated, Nielsen's mental condition remains the same as that which was found sufficient to relieve him of responsibility for his criminal acts in 1972. This mental condition was constitutionally sufficient to justify his automatic commitment upon acquittal, *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), and it remains sufficient to justify his continued commitment. In the words of the *Foucha* Court, Nielsen's current commitment bears a "reasonable relation to the purpose for which [he] was committed." 504 U.S. at 79–80, 112 S.Ct. at 1785. Therefore, we hold that Nielsen is not entitled to release on the ground that his present confinement denies him due process of law. In light of this holding, we need not address the remainder of the State's arguments on appeal.

## V.

### CONCLUSION

Based on the evidence presented by the State, Nielsen's current mental condition is the same as that successfully asserted as a basis to gain acquittal of criminal charges in 1972. *Foucha* requires release from commitment only when the basis for acquittal no longer exists. Since there is no question that Nielsen continues to be dangerous, the magistrate's decision is reversed and Nielsen's petition is denied.

Because I.C. § 66–337(d) is unconstitutional under the principles enumerated in *Foucha*, Nielsen's future confinement, in the absence of a legislative response, will be governed by the terms for release contained in I.C. § 66–337(b). *Cf. State v. Chilton*, 112 Idaho 823, 736 P.2d 1277 (1987) (following repeal of I.C. § 18–214 but prior to enactment of I.C. § 66–337(d), continued confinement of insanity acquittees was governed by the terms contained in I.C. § 66–337(b)). Thus, the State will be required to establish, by clear and convincing evidence, that Nielsen continues to suffer from the mental condition that was adjudicated a "mental illness" in 1972, and that he continues to present a danger to himself or others. *Id.* at 827–29, 736 P.2d at 1281–83.

McDEVITT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.